UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHEILA WALKER AND
BARBARA ROBINSON,

      **Plaintiffs,**

    **v.**            **Case No. 10-C-192**

KEN MCCOY,

      **Defendant.**

---

UNITED STATES OF AMERICA,

      **Plaintiff,**

    **v.**            **Case No. 11-C-388**

KEN MCCOY,

      **Defendant.**

---

**DECISION AND ORDER DENYING PLAINTIFFS'
MOTIONS FOR SUMMARY JUDGMENT**

---

**I. PROCEDURAL HISTORY**

On March 9, 2010, the plaintiffs Sheila Walker ("Walker") and Barbara Robinson ("Robinson") filed their complaint alleging that Ken McCoy ("McCoy") discriminated against them due to their race when he "refused to rent, refused to negotiate for the rental of, misrepresented the availability of and otherwise made unavailable and denied to the plaintiff [a] rental unit." (Docket

No. 1 at 2.) This matter was assigned case number 10-C-192 and a trial was scheduled to commence on May 9, 2011.

On April 5, 2011, the plaintiffs informed the court that the U.S. Department of Housing and Urban Development issued a Charge of Discrimination regarding the plaintiffs' complaint in this action. (Docket No. 21); see 42 U.S.C. § 3610(2)(A). The plaintiffs elected to have their complaint resolved in district court, see 42 U.S.C. § 3612(a), and therefore, in accordance with 42 U.S.C. § 3612(o), the Attorney General promptly commenced a separate civil action which was assigned case number 11-C-388 and assigned to this court. The trial scheduled in case number 10-C-192 was adjourned and the two related cases were consolidated.

The court granted the United States leave to file an amended complaint, (Docket No. 38), to which the defendant never filed an answer. On December 29, 2011, the United States filed a motion for partial summary judgment, (Docket No. 40), and on January 5, 2012, the individual plaintiffs filed their own motion for summary judgment essentially adopting the arguments in the government's brief, (Docket No. 50). The defendant failed to respond to either of these motions. Nonetheless, in light of the defendant's pro se status, the court issued an order instructing the defendant to respond. The court explicitly stated that "[a] response to a motion for summary judgment requires certain formalities and technicalities and therefore general blanket denials are not sufficient." (Docket No. 51.) On February 28, 2012, the defendant submitted what purports to be a response to the plaintiffs' motions. (Docket No. 52.) The United States has replied. (Docket No. 53.) The pleadings of the plaintiffs' motions for summary judgment are closed and the matters are ready for resolution. All parties have previously consented to the full jurisdiction of a magistrate judge. (Docket Nos. 6, 7, 30.)

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson, 477 U.S. at 248. A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## III. FACTS

The plaintiffs complied with Civ. L.R. 56(a) regarding additional summary judgment procedures when the non-movant is proceeding pro se, but, as noted above, McCoy nonetheless failed to respond to either motion for summary judgment. Even after this court's admonition to

3

McCoy regarding compliance with the applicable procedural rules and informing him that any factual assertions in the movants' submissions will be accepted as true unless specifically contradicted, (Docket No. 51), on February 28, 2012, McCoy submitted only a letter that purports to be his response to the plaintiffs' motions for summary judgment. This single page letter states, in its entirety:

> This is the response requested for case #10-C-192 and 11-C-388.
>
> I Ken McCoy deny all charges against me in reference to above cases with the following explanation.
>
> After interviewing plaintiffs for renting the property (339 S. Webster) it was not a suitable fit for the situation. Not enough parking for all people living in home. Not enough room for children to play. Only 1 bathroom. Past experience with 2 families in one home has not worked most of the time.
>
> We had a couple interviewed at the same time and they had 1 child. They came in with security deposit and 1st months rent. Both were employed and they had 1 car.
>
> Ms Walker and Robinson wanted a 1 year lease with housing assistance. The home would have needed some updates to bring to housing regulations.
>
> After reviewing the applicants, the couple were a better fit.
>
> I am sorry for any misunderstanding Ms. Walker or Ms. Robinson received.

(Docket No. 52.)

In direct contravention of this court's explicit instruction, McCoy offered a blanket denial of the claims against him and failed to comply with any of the formalities required by the Federal Rules of Civil Procedure and this district's local rules in regard to his factual statements. At this juncture of the case, McCoy's pro se status will not serve as an excuse for his lack of compliance. Therefore, the court considers the plaintiffs' proposed findings of fact as undisputed for the purposes of the motion and shall grant summary judgment if the motion and accompanying material fully support such an outcome. Fed. R. Civ. P. 56(e).

Walker and Robinson, both of whom are African-American, began looking for a new home in Green Bay in August of 2009 for themselves and Robinson's three children. (Docket No. 49, ¶¶1-2.) Walker saw a newspaper advertisement for a home in Green Bay, called the number listed, and spoke with McCoy about renting a three bedroom home located on Webster Street in Green Bay. (Docket No. 49, ¶3.) Walker's voice characteristics are readily identifiable as those of an African American female. (Docket No. 49, ¶9.) McCoy told Walker she could see it that day but when Walker went to the home, no one was there. (Docket No. 49, ¶4.)

Walker contacted McCoy again and asked for a time to see the home. (Docket No. 49, ¶4.) During this conversation, McCoy asked Walker where she was from and how many people would be living at the home. (Docket No. 49, ¶4.) Walker replied that she was originally from Milwaukee and that five people, two adults and three children, would be living at the home. (Docket No. 49, ¶4.) McCoy said he would call Walker back later that evening but he never did so. (Docket No. 49, ¶4.)

Walker called McCoy again the next day and McCoy said that his partners had discussed the matter and decided they would not rent to anyone from Milwaukee. (Docket No. 49, ¶5.) Walker assured McCoy that she would be a really good tenant but McCoy said his partners made the decision and there was nothing he could do about it. (Docket No. 49, ¶5.) McCoy is, in fact, the sole owner of the Webster Street property and has no partners in any of the five residential rentals he owns in Green Bay. (Docket No. 49, ¶¶10-11.)

Concerned that McCoy was discriminating against her due to her race, Walker sought assistance from the Metropolitan Milwaukee Fair Housing Council ("MMFHC"). (Docket No. 49, ¶6.) With the assistance of the MMFHC, Walker placed a recorded telephone call to McCoy where she asked that he talk to his partners because she needed a place to live. (Docket No. 49, ¶¶9, 12.) McCoy responded that the neighbors might have a problem if she was to rent the property and that

5

the home was in a nice neighborhood and he wanted to keep it that way. (Docket No. 49, ¶12.) McCoy eventually agreed to let Walker "re-enter" her application but stated that he hoped that his partners did not laugh at him like they did the last time he presented her application. (Docket No. 49, ¶13.) McCoy made this statement about his partners laughing at the application to discourage Walker from renting the home. (Docket No. 49, ¶30.)

A tester working with the MMFHC using the surname "Kowalski" and whose voice characteristics were not identifiable as African American contacted McCoy and left a message stating that she was relocating to Green Bay from Milwaukee and looking for a three-bedroom home for herself and three children. (Docket No. 49, ¶¶18-19.) McCoy left a voicemail message for the tester and stated he had two homes available and provided additional information about the available properties. (Docket No. 49, ¶20.) McCoy believed that this tester would be a better tenant than Walker based upon her voice alone. (Docket No. 49, ¶24.) Eventually, a white couple moved into the Webster Street property. (Docket No. 49, ¶21.)

Over his ten years renting property in Green Bay, McCoy is "pretty sure" he has never rented to a black person. (Docket No. 49, ¶11.) He described his prior tenants at one rental property as "all just normal people. There was [sic] no blacks or Mexicans." (Docket No. 49, ¶24.) McCoy informed a HUD investigator that he encountered problems with the neighbors of his rental properties when he rented to "some Mexicans and some lesbians" and so he considers the concerns of the "older" "white" neighbors when deciding to whom he should rent. (Docket No. 49, ¶¶22, 27.) Although Walker and Robinson could afford the home and had a good rental history, (Docket No. 49, ¶32), in McCoy's view, the fact that they were black was a factor he did not consider "favorable." (Docket No. 49, ¶31.) McCoy also stated he did not want to rent to Walker due in part to the fact that Robinson had children. (Docket No. 49, ¶31.) The court shall refer to additional facts as necessary below.

## IV. ANALYSIS

The Fair Housing Act ("FHA") generally prohibits landlords from refusing to negotiate the rental of any dwelling to a person or making statements indicating a preference on the basis of race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604(a), (c). Because McCoy owned three or more single family homes at any one time and does not fall within any of the other statutory exemptions, he is covered by the FHA. 42 U.S.C. § 3603(b)(1).

### A. 42 U.S.C. § 3604(c)

The court begins its analysis with the allegation that McCoy made a statement indicating a preference based upon race of familial status and/or race. To prove discrimination on the basis of a preferential statement, the plaintiff must prove (1) the defendant made the statement; (2) the statement was made with respect to the rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination against the plaintiffs on the basis of their familiar status or race. White v. HUD, 475 F.3d 898, 904 (7th Cir. 2007) (citing 42 U.S.C. § 3604(c)). Actions or statements violate 42 U.S.C. § 3604(c) if they would convey to an ordinary reasonable listener or reader that dwellings are not available to a particular group of persons because of the persons' race or familial status. Id. at 905-06.

The plaintiffs point to statements McCoy made in his deposition as the basis for the alleged violation of § 3604(c). The court is not persuaded that such "after-the-fact" statements made during the pendency of, and in relation to, a housing discrimination case can constitute an independent claim under § 3604(c). The plaintiffs have not directed the court to any authority that would suggest otherwise.

Section 3604(c) is clearly intended to prohibit efforts to indicate impermissible preferences that might prospectively dissuade protected persons from pursuing an opportunity to rent or purchase a particular dwelling. See, e.g., Gorski v. Troy, 929 F.2d 1183 (7th Cir. 1991) (lease

provision banning children absent express permission of landlord); Guider v. Bauer, 865 F. Supp. 492 (N.D. Ill. 1994) (advertisement stating residence was "[p]erfect for single or couple"). But there is nothing in the statute or its legislative history that would suggest that the post-hoc and retrospective statements McCoy made here are relevant as anything but evidence of the FHA claim that led to the plaintiffs' complaint in the first place.

Although it might be possible to articulate a strained and attenuated argument about how McCoy's statements were made "with respect to the sale or rental of a dwelling" as § 3604(c) requires, in light of the fact that the relevant property had long since been removed from the market, the court concludes that any such relationship insufficient to place McCoy's statements within the conduct Congress intended to proscribe by enacting § 3604(c). See Hearings on S. 1358, S. 2114 and S. 2280 before the Subcommittee on Housing and Urban Affairs, Senate Committee on Banking and Currency, 90th Cong. 1st Sess. (1967); see also 24 C.F.R. § 100.75. Even considering the command that the FHA be interpreted broadly so as to effectuate Congress' intent of ensuring fair housing across the nation, see, e.g., Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights, 558 F.2d 1283, 1289 (7th Cir. 1977), the court still finds McCoy's comments made during litigation to be outside the scope of § 3604(c) because proscribing such statements would, at best, negligibly serve the policy goal underlying the Act. Therefore the court rejects the plaintiffs' motion for summary judgment on their claim that McCoy violated § 3604(c) by statements made during the pendency of this litigation.

### B. 42 U.S.C. § 3604(a)

Turning to the plaintiffs' motion for summary judgment as to the claim that McCoy violated § 3604(a), a plaintiff may prove discrimination either through direct or indirect evidence. Kormoczy v. HUD, 53 F.3d 821, 824 (7th Cir. 1995). "Direct evidence is that which can be interpreted as an acknowledgment of the defendant's discriminatory intent." Id. If the plaintiffs proceed on the basis

of direct evidence, the common burden shifting framework utilized in all sorts of discrimination cases does not apply. Id. Instead, once the plaintiffs satisfy their burden the "defendant must prove by a preponderance of the evidence that [he] would have made the same decision absent the impermissible factor." Id. The plaintiffs seek to utilize direct evidence to satisfy their burden on summary judgment. (Docket No. 49 at 14.)

There is no dispute that McCoy is a landlord covered by the FHA and that Walker and Robinson are African American females who sought to rent one of McCoy's homes for themselves and three children. And although McCoy never met either Robinson or Walker in person, it is undisputed that Walker repeatedly spoke with McCoy on the telephone and that "Walker's voice characteristics are readily identifiable as that [sic] of an African American female." (Docket No. 49 at ¶9.) McCoy acknowledged he "might be able to" recognize a black accent when talking to someone. (Docket No. 41-2 at 7.) It is further undisputed that Walker informed McCoy that three children and two adults would be living at the residence.

**1. Race**

It is not necessary for the plaintiffs to prove that race was the sole factor in McCoy's refusal to rent the apartment to Walker and Robinson and attempt to dissuade Walker from seeking the apartment. There is absolutely no place for race as a factor in a real estate transaction and thus any consideration of race would offend the FHA. Smith v. Sol D. Adler Realty Co., 436 F.2d 344, 349-50 (7th Cir. 1970). However, a landlord's consideration of race as a factor in his decision to not rent to an individual is actionable only if it was a but-for cause for the decision. Bachman v. St. Monica's Congregation, 902 F.2d 1259, 1263 (7th Cir. 1990); Cato v. Jilek, 779 F. Supp. 937, 944 (N.D. Ill. 1991). Thus, even if race is considered as one factor among many in the landlord's decision not to rent, there is no liability if the other factors would have led the landlord to still refuse to rent the dwelling to that individual.

9

The undisputed facts recounted above would certainly support the inference that race played a role in McCoy's decision, but it is not the only reasonable inference. In this regard, based on the court's review of the entire record presented with the motion, it appears that the plaintiffs' proposed findings of fact are incomplete. The proposed findings of fact suggest that McCoy was willing to rent to the tester, but other information in the record, specifically the request for admissions prepared by a HUD investigator, (Docket No. 41-1 at 25-30), indicate that McCoy also tried to dissuade the tester from renting the properties. As implied in HUD's request's for admission, McCoy informed the tester "that the houses are located in the central part of town where most people do not want to live," "the area where the homes are located 'has a lot of rentals, grandmas and grandpas, Mexican, African Americans, and some 'lights' as well,'" and was "not a good part of town." (Docket No. 41-1 at 28, ¶¶43, 45.) McCoy also informed the tester that "some Hmong children attend the school that her children would be attending were she to rent either of the two available houses" and that he wanted her "to know the situation so you do not wrinkle your nose when you get there." (Docket No. 41-1 at 28, ¶47.)

Moreover, although there is no indication that McCoy informed the tester, as he did Walker, that he categorically would not rent to tenants from Milwaukee, there is conflicting evidence as to whether the tester told McCoy that she was relocating from Milwaukee. In her first inquiry about the apartment, the tester stated she was moving from Milwaukee. (Docket No. 43-2 at 1.) However, this conversation was not with the defendant but his assistant. (Docket No. 43-2 at 2; 41-1, ¶15.) During her second conversation, which was with the defendant, the tester stated she was relocating from Wauwatosa, a suburb of Milwaukee. (Docket No. 43-4 at 1.) The requests for admission from the HUD investigator suggest that there was a subsequent conversation between the tester and McCoy where she stated that she lived in Milwaukee but worked in Wauwatosa. (Docket No. 41-1,

¶41.) The court has not been provided with any recording, transcript, or further information about these subsequent conversations.

The court cannot overlook the information in the record that suggests that McCoy was similarly unwilling to rent to the tester. In light of the racial dissimilarity between the tester and the individual plaintiffs, there thus exists a dispute of material fact on the question of whether race was a but-for cause of McCoy's apparent refusal to rent to the individual plaintiffs. Even if the court was to find it appropriate to overlook the inferences drawn from the requests for admission, the court would still conclude that the record before this court is insufficient to permit the court to conclude that race was a but-for cause for McCoy's decision. There are simply far too many other possible factors in McCoy's decision to permit the conclusion that his decision was necessarily dictated by race. Thus, the court must deny the plaintiffs' motion for summary judgment as to this claim.

### 2. Familial Status

McCoy freely admitted during his deposition that the fact that children would be living in the residence was a factor in his decision to refuse to rent to Walker and Robinson. (Docket No. 41-1 at 17.) And unlike with the claim of racial discrimination where the evidence that McCoy was unwilling to rent to the tester undercuts the claim, McCoy's efforts to dissuade the tester tend to corroborate the claim of discrimination based upon familial status. It was on familial status that the individual plaintiffs and the tester were most similar to each other and apparently dissimilar from the couple to whom McCoy eventually rented the residence who had, at most, one child, (Docket No. 41-2 at 9 (rental application noting three people would live at residence)).

Although the evidence is likely sufficient to permit the conclusion that familial status was a factor in McCoy's decision, the court finds the record insufficient to support the conclusion that it is undisputed that familial status was a but-for cause of McCoy's decision. For example, aside from familial status, the tester and the individual plaintiffs were alike in that they were both from the

11

Milwaukee area while the eventual tenants were from the Wausau area, (Docket No. 41-2 at 9). Thus, it is possible that even if they did not have three children, McCoy would have still refused to rent to either the tester or the individual plaintiffs due to their prior residence in the Milwaukee area. There are also innumerable other factors that might have reasonably impacted McCoy's decision, and thus the court concludes that summary judgment in favor of the plaintiffs on this claim is inappropriate.

## V. CONCLUSION

Although the plaintiffs' motions for summary judgment are essentially unopposed, the court concludes that disputes of material fact exist, and therefore summary judgment is not appropriate. Although there is evidence that McCoy considered Walker and Robinson's race and familial status when refusing to rent to them, the court is unable to conclude that there is no dispute of material fact about whether these factors were but-for causes of his decision. Finally, the court concludes that statements made during this litigation are outside the scope of the statements proscribed by 42 U.S.C. § 3604(c).

**IT IS THEREFORE ORDERED** that the plaintiffs' motions for summary judgment, (Docket Nos. 40, 50), are **denied**.

**IT IS FURTHER ORDERED** that the court shall hold a telephone scheduling conference on **April 23, 2012** at **9:00 A.M**. to discuss the scheduling of further proceedings in this matter. The court will place the conference call.

Dated at Milwaukee, Wisconsin this 10th day of April, 2012.

AARON E. GOODSTEIN
U.S. Magistrate Judge